United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRADETECH, INC., | No. C 06-02991 WHA |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND; DENYING DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE OR TO COMPEL ARBITRATION; AND VACATING HEARING** |
| AMERICAN EMPLOYERS GROUP; APPLIED UNDERWRITERS; and DOES 1 through 50, inclusive, | |
| Defendants. | |

## INTRODUCTION

In this contract dispute, the parties make competing motions. Plaintiff GradeTech, Inc. moves to remand this action to state court on grounds that no diversity jurisdiction supported removal. Defendants American Employers Group and Applied Underwriters move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue or, in the alternative, to compel arbitration. This order finds that no diversity jurisdiction exists, thus this action must be remanded prior to any ruling on defendants' motion. Accordingly, plaintiff's motion is **GRANTED** and defendants' motions are **DENIED**.

## STATEMENT

Plaintiff GradeTech is a construction company incorporated and with its principal place of business in California. Defendant AU is a financial-services company that provides various services for employers including payroll processing and insurance underwriting. Defendant

1  AEG is a wholly-owned subsidiary of AU that provides payroll processing for employers. It is
2  undisputed that AU and AEG are both incorporated in Nebraska. The principal place of
3  business for defendants, however, is in dispute.
4      In September 2000, GradeTech entered into a written agreement with AU and AEG
5  entitled "SolutionOne Application and Agreement for Service" (Carrington Decl. Exh. A).
6  SolutionOne is a human-resources program by which defendants offer a package of their
7  services including payroll processing.
8      In October 2002, defendants' customer-relations manager provided a letter updating the
9  terms of the 2000 agreement. The 2002 letter stated that "[e]ffective with your next payroll new
10  SolutionOne terms go into effect. The new standard terms are enclosed along with your new
11  service agreements" (Carrington Decl. Exh. B).
12      The amended "SolutionOne Services Agreement" provided several terms pertinent to
13  defendants' motions. These terms are provided to give context for defendants' motions,
14  although as explained below, the issues of venue and arbitration are not reached by this order.
15      The amended agreement provided (Carrington Decl. Exh. C):

> If You submit payroll for processing, You are deemed to have accepted all of the terms and conditions of this Agreement. Your acceptance is ratified each and every time You submit payroll to Us.

The agreement provided the following forum-selection provision (*ibid.*):

> This Agreement and any disagreement or claim arising between the parties is governed by the internal law of the State of Nebraska, without reference to conflicts of law. By submitting payroll to Us, You expressly submit to the venue and jurisdiction of all courts located in Omaha, Douglas County, Nebraska, and You agree that the exclusive forum for any lawsuit You may bring against Us must be filed in the District Court of Douglas County, Nebraska or in the United States District Court for Nebraska sitting in Omaha and You will not file any lawsuit in any other Court.

Furthermore, the agreement provided (*ibid.*):

> In the event, the forum selection clause in Paragraph 11.0 is held to be unenforceable, any dispute between the parties shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association (AAA) before one arbitrator in Omaha, Nebraska.

2

GradeTech disputes whether a copy of the amended agreement was ever provided and asserts that no such agreement was ever signed by anybody at GradeTech. AEG's underwriting operations manager, Michael Carrington, counters that a copy of this very agreement was provided to GradeTech (Carrington Reply Decl. ¶ 3).

On April 10, 2006, GradeTech filed suit against defendants in California Superior Court for the County of San Francisco. In their complaint, GradeTech alleged several state-law claims relating to the dissolution of the parties' relationship. GradeTech alleged that defendants over-collected, failed to report, and failed to remit certain payroll taxes on GradeTech's behalf, and sought return of these monies. Defendants removed the action to federal court on May 3 on the purported grounds of diversity jurisdiction.

Plaintiff now seeks to remand this action to state court, contending that no diversity jurisdiction exists. Defendants, in turn, make two motions of their own. Defendants move to dismiss this action for lack of venue or transfer the action to federal district court in Nebraska on the basis of the forum-selection clause noted above. In the alternative, defendants move to compel arbitration.

**ANALYSIS**

A crucial preliminary matter concerns the *sequence* in which a court must address competing motions to remand and to dismiss for improper venue or to compel arbitration. In this circuit a court must determine whether or not it has subject-matter jurisdiction before considering whether the venue is proper. *See Bookout v. Beck*, 354 F.2d 823, 825 (9th Cir. 1965) ("jurisdiction must be first found over the subject matter and the person before one reaches venue"); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001) ("A court may not transfer an action for improper venue unless it has subject matter jurisdiction").

**1.    LEGAL STANDARD FOR MOTION FOR REMAND.**

Removal under 28 U.S.C. 1441(b) is permitted for actions over which the district court could have exercised original jurisdiction pursuant to 28 U.S.C. 1332 "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is

3

1  brought." The removing party bears the burden of establishing that removal is proper.
2  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990). The removal statutes are
3  strictly construed such that any doubts are resolved in favor of remand. *Gaus v. Miles, Inc.*,
4  980 F.2d 564, 566 (9th Cir. 1992).

5  "A federal court has subject matter jurisdiction over an action that either arises under
6  federal law, or when there is complete diversity of citizenship between the parties and the
7  amount in controversy exceeds $75,000." *Tosco Corp. v. Communities for a Better Env't*, 236
8  F.3d 495, 499 (9th Cir. 2001). "Subject matter jurisdiction based upon diversity of citizenship
9  requires that no defendant have the same citizenship as any plaintiff."

10  A corporation shall be deemed a citizen of the state under which it has been incorporated
11  and the state where it has its principal place of business. In the Ninth Circuit, one of two tests is
12  applied when identifying an organization's principal place of business.

13  *First*, there is the "place of operations test." "[W]e apply the 'place of operations' test
14  when a corporation conducts a substantial predominance of its business activities within a
15  state." *Tosco*, 236 F.3d at 497 (9th Cir. 2001) (citing *Industrial Tectonics, Inc. v. Aero Alloy*,
16  912 F.2d 1090, 1093 (9th Cir. 1990)). Where this first test applies, a number of factors are used
17  to determine a corporation's "place of operations," including the location of employees, the
18  location of tangible property, the corporation's production activities, sources of income, and
19  where the corporation's sales take place. *Id.* at 500 (9th Cir. 2001).

20  *Second*, the alternative test for identifying a corporation's principal place of business is
21  the "nerve-center" test. Under this second test, a corporation's principal place of business is
22  where its executive and administrative functions are performed. The nerve-center test was
23  developed to determine citizenship in cases where a corporation's activity is spread so evenly
24  among various states that the only applicable basis for identifying citizenship would be to locate
25  the place where the corporation chose to center the power over corporate policy and
26  administration. *Tosco*, 236 F.3d at 500.

**2. APPLICATION.**

It is undisputed that both defendants are incorporated in Nebraska. What remains in dispute is the principal places of business for defendants, with defendants arguing that their principal place is Nebraska and plaintiff arguing that defendants' principal place is California. In this action, the outcome is the same regardless of which test is applied. This order finds that the principal place of business for both defendants is California. It is sufficient, however, if California is the principal place of business for either defendant, thus each defendant is addressed here in turn.

**A. APPLIED UNDERWRITERS.**

The strongest evidence for holding that California is AU's principal place of business comes from a judicial admission in an unrelated lawsuit.[1]

In September 2003, AU filed a complaint against an unrelated third party in the United States District Court for the District of Nebraska (Antonen Decl. Exh. B). According to the September 2003 complaint (*ibid.*) (emphasis added):

> Plaintiff Applied Underwriters, Inc. is a Nebraska Corporation having its *principal place of business* at 5 Thomas Mellon Circle, San Francisco, California 94134 with a processing office at 10805 Old Mill Road, Omaha, Nebraska 68154.

AU's pleading certainly constitutes a judicial admission. "Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

AU contends that the purported admission is outdated. It is true, for purposes of diversity jurisdiction, that a court must analyze citizenship as of the date the complaint was filed (here, April 2006). *See, e.g.*, *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004). But AU has not offered sufficient evidence to demonstrate that its citizenship has changed since their admission in September 2003.

Carrington, AU's underwriting operations manager, asserts that "AEG and Applied Underwriters have moved the majority of their operations to Omaha, Nebraska and as of the

---

[1] This order takes judicial notice of several previous complaints filed by defendants as public records not subject to reasonable dispute. Fed. R. Evid. 201.

5

filing of the Complaint in the present matter, their de facto corporate headquarters are in Nebraska" (Carrington Decl. ¶ 5). Other evidence undermines Carrington's conclusion.

In May 2006, AU's website provided the following contact information (Antonen Decl. Exh. A):

> Corporate Headquarters
> Marketing and Underwriting
> P.O. Box 281900
> San Francisco, CA 94128

The website also listed an "Investor Relations" office in San Diego, California. The only Nebraska office is listed as providing "Customer Service" (*ibid.*). This contradicts Carrington's testimony that AU's California-based employees are peripheral compared to the Nebraska employees (Carrington Decl. ¶ 3).

Likewise, in a letter bulletin posted on AU's website dated February 13, 2006, AU's Senior Vice President Carl DeBarbrie informed AU's customers that (Antonen Decl. Exh. A):

> We have relocated our Corporate Headquarters to the Metro Center Tower in Foster City, California. Metro Center is a spectacular multi-building property that supports the operational requirements created by our significant growth and accommodates plans for future expansion.

In this bulletin, AU again held out its principal place of business to the world as California. Even more glaring, the bulletin indicated that defendants' operations in California have expanded and will continue to expand, rather than retract and relocate to Nebraska.

The above bulletin also casts doubt on whether Carrington accurately describes the disparity between defendants' operating space in Nebraska and California (Carrington Decl. ¶¶ 3–4). As GradeTech persuasively notes, even if the sheer square footage of the Nebraska customer-service office exceeds the Foster City and San Diego offices, the value of the "spectacular" California property arguably exceeds the value of the Nebraska property.

In yet another bulletin pulled from AU's website dated May 22, 2006, AU described itself as being "headquartered in Foster City, California" (Antonen Supplemental Decl. Exh. B).

6

Perhaps the only factor that supports defendants' argument for Nebraska as their principal place of business is that they apparently have more employees in Nebraska than California. According to Carrington, AU had 452 employees at the time of the complaint spread across four states: 373 in Nebraska, 48 in California, 27 in New York, and 4 in Tennessee (Carrington Decl. ¶ 3). AU adds that its president and CEO reside in Omaha (*ibid.*).

Regardless of this detail, there is simply too much evidence, applying either the "place of operations test" or the "nerve center test," to reach any conclusion other than that AU has a principal place of business in California. AU's repeated self-references to having a principal place of business and a headquarters in California must be held against it. Diversity is thus destroyed.

### 2. AMERICAN EMPLOYERS GROUP.

This order also finds that AU's subsidiary AEG has a principal place of business in California.

Again, AEG indicated as much in a previous unrelated lawsuit. *American Title*, 861 F.2d at 226. In June 2004, AEG filed suit in the Superior Court of California for the County of San Francisco against an unrelated customer of the SolutionOne program (Antonen Decl. Exh. D). The June 2004 complaint stated that "[a]t all times relevant to this complaint, AEG was located in San Francisco County, California" (*ibid.*). While being located in a place and having a principal place of business are different, this admission still supports a finding that AEG was predominantly operating in California.

Again, it does not appear that this predominance has changed since 2004. A copy of the SolutionOne agreement forwarded to GradeTech by AEG's corporate counsel in February 2006 listed Burlingame, California as the location of AEG's "Underwriting Manager" (Antonen Supplemental Decl. Exh. C). This seems inconsistent with Carrington's statement that AEG has no employees of its own. (Carrington Decl. ¶ 3). AEG at least shares employees with AU, including high-level managers who appear to reside in California.

Finally, it appears that AEG does a great deal of business in California. In December 2004, in yet another lawsuit involving one of defendants, AEG brought suit against the State of

California challenging AEG's unemployment-insurance contributions (Antonen Decl. Exh. C).[2] AEG attached to the December 2004 complaint a copy of a letter to the District Tax Administrator in Van Nuys, California, which stated that AEG had 3900 "clients" in California (*ibid.*). According, to the December 2004 complaint, AEG contributed over five million dollars to California on behalf of those clients. The fact that AEG was responsible for payment for so many clients in California, supports the view that AEG had a substantial presence in California, independent of AU's presence in this state. Again, finding AEG to have a principal place of business in California, diversity is destroyed.

\*       \*       \*

To the extent the citizenship of either defendant could be deemed a "close call," remand is required. As noted above, the removing party bears the burden of establishing that removal is proper and any doubts must resolved in favor of remand. *Emrich*, 846 F.2d at 1195; *Gaus*, 980 F.2d at 566. Defendants have not carried their burden to eliminate doubts as to the propriety of the removal.

However strong defendants' motions regarding improper venue and arbitration may be, those issues cannot be addressed in this federal court as no subject-matter jurisdiction exists.

## CONCLUSION

For the foregoing reasons, GradeTech's motion for remand is **GRANTED**. The Clerk of the Court shall immediately send the file in this case to California Superior Court for the County of California. The Court lacks jurisdiction to consider defendants' motions to dismiss

---

[2] In the December 2004 suit, AEG alleged it had a principal place of business in Nebraska. That allegation is an outlier compared to the numerous other admissions and statements to the contrary, and is belied by other evidence in the December 2004 complaint.

8

for improper venue or to compel arbitration, thus defendants' motions are **DENIED**.  Finding no further argument necessary, hearing on this motion is **VACATED**.

**IT IS SO ORDERED.**

Dated:  June 29, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE